FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Apr 28, 2020

SEAN F. McAVOY, CLERK

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| JODY S.,[1] | No. 2:19-cv-00300-MKD |
| Plaintiff, | |
| vs. | ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |
| ANDREW M. SAUL, COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | ECF Nos. 13, 17 |

Before the Court are the parties' cross-motions for summary judgment. ECF Nos. 13, 17. The parties consented to proceed before a magistrate judge. ECF No. 6. The Court, having reviewed the administrative record and the parties' briefing,

---

[1] To protect the privacy of plaintiffs in social security cases, the undersigned identifies them by only their first names and the initial of their last names. *See* LCivR 5.2(c).

ORDER - 1

is fully informed.  For the reasons discussed below, the Court denies Plaintiff's

motion, ECF No. 13, and grants Defendant's motion, ECF No. 17.

## JURISDICTION

The Court has jurisdiction over this case pursuant to 42 U.S.C. §§ 405(g);

1383(c)(3).

## STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social

Security is governed by 42 U.S.C. § 405(g).  The scope of review under § 405(g) is

limited; the Commissioner's decision will be disturbed "only if it is not supported

by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153,

1158 (9th Cir. 2012).  "Substantial evidence" means "relevant evidence that a

reasonable mind might accept as adequate to support a conclusion." *Id*. at 1159

(quotation and citation omitted).  Stated differently, substantial evidence equates to

"more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and

citation omitted).  In determining whether the standard has been satisfied, a

reviewing court must consider the entire record as a whole rather than searching

for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its

judgment for that of the Commissioner. *Edlund v. Massanari*, 253 F.3d 1152,

1156 (9th Cir. 2001).  If the evidence in the record "is susceptible to more than one

ORDER - 2

rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012). Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Id.* An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id.* at 1115 (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE-STEP EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

ORDER - 3

1      The Commissioner has established a five-step sequential analysis to

2   determine whether a claimant satisfies the above criteria.  *See* 20 C.F.R. §§

3   404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v).  At step one, the Commissioner

4   considers the claimant's work activity.  20 C.F.R. §§ 404.1520(a)(4)(i),

5   416.920(a)(4)(i).  If the claimant is engaged in "substantial gainful activity," the

6   Commissioner must find that the claimant is not disabled.  20 C.F.R. §§

7   404.1520(b), 416.920(b).

8      If the claimant is not engaged in substantial gainful activity, the analysis

9   proceeds to step two.  At this step, the Commissioner considers the severity of the

10  claimant's impairment.  20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  If the

11  claimant suffers from "any impairment or combination of impairments which

12  significantly limits [his or her] physical or mental ability to do basic work

13  activities," the analysis proceeds to step three.  20 C.F.R. §§ 404.1520(c),

14  416.920(c).  If the claimant's impairment does not satisfy this severity threshold,

15  however, the Commissioner must find that the claimant is not disabled.  20 C.F.R.

16  §§ 404.1520(c), 416.920(c).

17     At step three, the Commissioner compares the claimant's impairment to

18  severe impairments recognized by the Commissioner to be so severe as to preclude

19  a person from engaging in substantial gainful activity.  20 C.F.R. §§

20  404.1520(a)(4)(iii), 416.920(a)(4)(iii).  If the impairment is as severe or more

ORDER - 4

severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits.  20 C.F.R. §§ 404.1520(d), 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity."  Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations, 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work).  20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled.  20 C.F.R. §§ 404.1520(f), 416.920(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  In making this determination, the Commissioner must also consider vocational factors such as the claimant's age,

1   education, and past work experience.  20 C.F.R. §§ 404.1520(a)(4)(v),

2   416.920(a)(4)(v).  If the claimant is capable of adjusting to other work, the

3   Commissioner must find that the claimant is not disabled.  20 C.F.R. §§

4   404.1520(g)(1), 416.920(g)(1).  If the claimant is not capable of adjusting to other

5   work, the analysis concludes with a finding that the claimant is disabled and is

6   therefore entitled to benefits.  20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).

7        The claimant bears the burden of proof at steps one through four above.

8   *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).  If the analysis proceeds to

9   step five, the burden shifts to the Commissioner to establish that 1) the claimant is

10  capable of performing other work; and 2) such work "exists in significant numbers

11  in the national economy."  20 C.F.R. §§ 404.1560(c)(2), 416.960(c)(2); *Beltran v.*

12  *Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

13                          **ALJ'S FINDINGS**

14        On April 10, 2014, Plaintiff applied both for Title II disability insurance

15  benefits and Title XVI supplemental security income benefits alleging a disability

16  onset date of July 1, 2008.  Tr. 386-406.  The applications were denied initially and

17  on reconsideration.  Tr. 228-34, 237-41.  Plaintiff appeared before an

18  administrative law judge (ALJ) on June 2, 2016.  Tr. 93-124.  On August 1, 2016,

19  the ALJ denied Plaintiff's claim.  Tr. 202-19.  On December 15, 2017, the Appeals

20  Council remanded the case to an ALJ to resolve issues involving additional

evidence submitted in connection with Plaintiff's request for review.  Tr. 220-25.

On remand, the Appeals Council instructed the ALJ to further evaluate Plaintiff's

mental impairments considering the new and material evidence submitted, give

further consideration to Plaintiff's maximum RFC during the entire period, and if

warranted by the expanded record, obtain evidence from a vocational expert to

clarify the effect of the assessed limitations on Plaintiff's occupational base.  Tr.

223.

On June 13, 2018, Plaintiff appeared before the same ALJ for a second

hearing.  Tr. 125-59.  On September 11, 2018, the ALJ denied Plaintiff's claim.

Tr. 55-81.  At step one of the sequential evaluation process, the ALJ found that

Plaintiff had not engaged in substantial gainful activity since July 1, 2008.  Tr. 60.

At step two, the ALJ found that Plaintiff had the following severe impairments:

diabetes mellitus, obesity, hypothyroidism, history of myocardial infarction, status-

post stent placement February 2014, mild degenerative disc disease, and

adjustment disorder.  Tr. 60.

At step three, the ALJ found that Plaintiff did not have an impairment or

combination of impairments that met or medically equaled the severity of a listed

impairment.  Tr. 61.  The ALJ then concluded that Plaintiff had the RFC to

perform light work with the following limitations:

ORDER - 7

> [Plaintiff] can occasionally lift and carry up to 20 pounds maximum and frequently lift and carry up to 10 pounds maximum. She can sit for six hours total in an eight-hour workday with normal breaks. She can stand and walk for two hours total in an eight-hour workday with normal breaks, and while alternating between sitting and standing every 60 minutes. [Plaintiff] can occasionally stoop; balance; crouch; bend; kneel; crawl; and climb ramps and stairs. She can never climb ladders, ropes or scaffolds. She can occasionally reach overhead with her right upper extremity. [Plaintiff] can have no concentrated exposure to hazards, including unprotected heights and dangerous heavy machinery. [Plaintiff] can tolerate a predictable environment, with seldom change in routine. She can perform tasks that involves (sic) meeting goals set by others, but never requires independent judgment or decision-making or production rate of pace. She can never work in large groups or in proximity to crowds.

Tr. 63-64.

At step four, the ALJ found that Plaintiff was capable of performing her past relevant work as an order clerk. Tr. 70. At step five, the ALJ developed an alternative and more restrictive RFC that included the original RFC restrictions in addition to limitations involving superficial public interaction, no collaborative interaction with coworkers, and no over-the-shoulder supervision. Tr. 71. The ALJ found that, considering Plaintiff's age, education, work experience, RFC, and testimony from the vocational expert, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform, such as office helper, parking lot attendant, dispatcher maintenance service, receptionist, insurance clerk, and data entry clerk. Tr. 71-72. Therefore, the ALJ concluded

ORDER - 8

that Plaintiff was not under a disability, as defined in the Social Security Act, from the alleged onset date of July 1, 2008, through the date of the decision.  Tr. 72.

On July 6, 2019, the Appeals Council denied review of the ALJ's decision, 1-7, making the ALJ's decision the Commissioner's final decision for purposes of judicial review. *See* 42 U.S.C. § 1383(c)(3).

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying her disability insurance benefits under Title II and supplemental security income benefits under Title XVI of the Social Security Act.  Plaintiff raises the following issues for review:

1. Whether the ALJ properly evaluated Plaintiff's symptom claims; and

2. Whether the ALJ properly incorporated the opined limitations into the RFC and conducted proper step-four and step-five analyses.

ECF No. 13 at 11.

## DISCUSSION

### A.    Plaintiff's Symptom Claims

Plaintiff faults the ALJ for failing to rely on clear and convincing reasons in discrediting her symptom claims.  ECF No. 13 at 14-16.  An ALJ engages in a two-step analysis to determine whether to discount a claimant's testimony regarding subjective symptoms.  Social Security Ruling (SSR) 16–3p, 2016 WL 1119029, at

ORDER - 9

1  *2.  "First, the ALJ must determine whether there is objective medical evidence of

2  an underlying impairment which could reasonably be expected to produce the pain

3  or other symptoms alleged."  *Molina*, 674 F.3d at 1112 (quotation marks omitted).

4  "The claimant is not required to show that [the claimant's] impairment could

5  reasonably be expected to cause the severity of the symptom [the claimant] has

6  alleged; [the claimant] need only show that it could reasonably have caused some

7  degree of the symptom."  *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).

8       Second, "[i]f the claimant meets the first test and there is no evidence of

9  malingering, the ALJ can only reject the claimant's testimony about the severity of

10 the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the

11 rejection."  *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (citations

12 omitted).  General findings are insufficient; rather, the ALJ must identify what

13 symptom claims are being discounted and what evidence undermines these claims.

14 *Id*. (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th 1996); *Thomas v. Barnhart*,

15 278 F.3d 947, 958 (9th Cir. 2002) (requiring the ALJ to sufficiently explain why it

16 discounted claimant's symptom claims)).  "The clear and convincing [evidence]

17 standard is the most demanding required in Social Security cases."  *Garrison v.*

18 *Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec.*

19 *Admin*., 278 F.3d 920, 924 (9th Cir. 2002)).

20

ORDER - 10

Factors to be considered in evaluating the intensity, persistence, and limiting effects of a claimant's symptoms include: 1) daily activities; 2) the location, duration, frequency, and intensity of pain or other symptoms; 3) factors that precipitate and aggravate the symptoms; 4) the type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms; 5) treatment, other than medication, an individual receives or has received for relief of pain or other symptoms; 6) any measures other than treatment an individual uses or has used to relieve pain or other symptoms; and 7) any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms.  SSR 16-3p, 2016 WL 1119029, at *7; 20 C.F.R. §§ 404.1529(c), 416.929(c).  The ALJ is instructed to "consider all of the evidence in an individual's record," to "determine how symptoms limit ability to perform work-related activities."  SSR 16-3p, 2016 WL 1119029, at *2.

The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but that Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the evidence.  Tr. 65.

*1. Not Supported by Objective Medical Evidence*

The ALJ found that Plaintiff's physical and mental symptom complaints were not supported by the objective medical evidence.  Tr. 66-68.  An ALJ may

ORDER - 11

1    not discredit a claimant's symptom testimony and deny benefits solely because the

2    degree of the symptoms alleged is not supported by the objective medical

3    evidence. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *Bunnell v.*

4    *Sullivan*, 947 F.2d 341, 346-47 (9th Cir. 1991). However, the objective medical

5    evidence is a relevant factor, along with the medical source's information about the

6    claimant's pain or other symptoms, in determining the severity of a claimant's

7    symptoms and their disabling effects. *Rollins*, 261 F.3d at 857; 20 C.F.R. §§

8    404.1529(c)(2), 416.929(c)(2).

9         Here, the ALJ discussed Plaintiff's alleged symptoms and conditions that

10   caused her to be unable to work, such as heart attack, blocked arteries, irregular

11   heartbeat, and diabetes type 2. Tr. 64 (citing Tr. 430). The ALJ cited Plaintiff's

12   reports that pain in her hips and legs made it difficult for her to stand, sit, and walk.

13   Tr. 64 (Tr. 438 -39, 443). The ALJ also cited Plaintiff's specific allegations that

14   she could stand for about 20 minutes, walk for two blocks, sit for 30 minutes,

15   could not lift more than 10 pounds, was unable to kneel, and had difficulty

16   climbing stairs. Tr. 64 (citing Tr. 443). The ALJ noted that Plaintiff later alleged

17   her condition worsened and caused more difficulty in her daily living. Tr. 64

18   (citing Tr. 462). The ALJ referenced Plaintiff's hearing testimony from June 2016

19   where she alleged that her daily fatigue worsened and she needed to rely on her

20   boyfriend to help her throughout the day, including helping her dress. Tr. 64

ORDER - 12

1  (citing Tr. 108-09). The ALJ cited Plaintiff's testimony that she stopped shopping

2  because she could not walk around the store, and she relied on her boyfriend to

3  help with most household chores. Tr. 64 (citing Tr. 108-10). The ALJ cited

4  Plaintiff's testimony from June 2018 where she alleged that her depressive

5  symptoms worsened for a time since June 2016, she had difficulty leaving her

6  home, and did not feel motivated to do anything. Tr. 64 (citing Tr. 142). The ALJ

7  highlighted Plaintiff's testimony that she had no improvement in her back or hip

8  pain, and she had ongoing stiffness that caused difficulty walking. Tr. 64 (citing

9  Tr. 133). The ALJ addressed Plaintiff's claims that she occasionally needed to use

10  a walker due to back pain that radiated down her leg and she hired a caregiver to

11  help with household chores and give her encouragement and motivation. Tr. 64

12  (citing Tr. 133-35). The ALJ also highlighted Plaintiff's allegations that she had

13  occasional episodes of dizziness and vertigo, and she had neuropathy in her hands

14  and feet. Tr. 65 (citing Tr. 136, 139).

15  However, the ALJ found that the objective medical evidence showed

16  generally unremarkable findings that did not support Plaintiff's allegations of total

17  disability. Tr. 66-68. As to Plaintiff's physical complaints, the ALJ found that the

18  medical evidence indicated stable, improving, and normal physical status when

19  Plaintiff remained compliant with prescribed treatment. Tr. 66-68; *see, e.g.,* Tr.

20  870 (June 23, 2009: imaging of Plaintiff's lumbar spine revealed mild disc

ORDER - 13

narrowing, moderate endplate spurring at T12-L1 and L1-L2, and moderate

degenerative disc disease in Plaintiff's mid and lower lumber facet joints); Tr. 874

(July 12, 2013: imaging of Plaintiff's cervical spine revealed mild degeneration at

C5-C6 and C6-C7); Tr. 883; Tr. 965 (November 25, 2015: subsequent imaging

revealed stable moderate spondylosis of Plaintiff's mid cervical spine); Tr. 791

(February 19, 2016: a treating PA-C assessed "cervical radiculopathy"; but there

were no documented findings of objective neurological abnormalities during the

examination); Tr. 1177-78 (October 4, 2016: imaging revealed moderate

spondylosis at C5-C7 with bony foraminal stenosis greatest at C3-C4, and no

evidence of acute fracture or dislocation; the reviewing radiologist noted there

were no gross interval changes compared with the November 2015 imaging, and

noted an impression of only mild-to-moderate bilateral neural foraminal narrowing

at C5-C6); Tr. 624, 649, 679, 1165, 1171 (treating sources generally documented

normal neurological findings and few instances of muscle spasm with full range of

motion in the course of musculoskeletal examinations); Tr. 630, 635, 638 (treating

sources characterized Plaintiff's diabetes as "stable" and "uncomplicated" with

improved blood sugar levels during times when Plaintiff remained compliant with

prescribed treatment); Tr. 620-21 (June 3, 2009: during an examination, Plaintiff's

diabetes was characterized as "uncontrolled" and it was noted that Plaintiff had not

been checking blood sugar levels); Tr. 650 (July 11, 2013: after a follow-up

examination, William Bomberger, PA-C, observed that Plaintiff's diabetes remained under control as long as Plaintiff was compliant with taking prescribed "medications that are affordable"; he further opined that Plaintiff's symptoms associated with diabetes, hypothyroidism, and migraines were "not disabling"); Tr. 1168, 1363, 1367 (Mr. Bomberger's clinical notes indicated that Plaintiff remained stable when she was compliant with taking prescribed medication). The ALJ also found that the record showed Plaintiff made a quick recovery following her myocardial infarction and stenting on February 27, 2014. Tr. 67; *see, e.g.,* Tr. 715 (October 29, 2014: treating cardiologist, Michael Ring, M.D., noted normal findings upon an initial evaluation); Tr. 717, 726 (November 11, 2014: Plaintiff's EKG stress test revealed findings within normal limits and myocardial perfusion imaging also revealed normal findings, with overall left ventricular systolic functioning within normal limits greater than 71 percent); Tr. 1381-82 (May 22, 2018: a treatment record indicated that Plaintiff's last nuclear stress test was normal; her cardiologist noted that he was discontinuing prescribed blood thinner medication because Plaintiff had no ongoing symptoms).

Further, as to Plaintiff's mental health complaints, the ALJ found that except for episodic periods of increased depression due to situational stressors, treating mental health and medical sources consistently documented findings of relatively mild mental status abnormality throughout the record. Tr. 67-68; *see, e.g.,* Tr.

ORDER - 15

1369-72 (July 9, 2013: a mental status examination during a psychological

evaluation demonstrated that Plaintiff had no mental status abnormality; Plaintiff's

performance on "Part A" and "Part B" of the Trail Making Tests demonstrated

scores within the normal range of executive functioning); Tr. 648 (July 11, 2013:

the record did not reflect the presence of any severe mental health symptomology

or complaints of psychological symptoms from the alleged onset date in July 2008

until July 2013, when a treating medical provider noted that Plaintiff's responses to

a mood instrument demonstrated a range consistent with only moderately severe

depression); Tr. 916 (April 17, 2014: at a mental status examination, Plaintiff had

depressed/anxious mood with moderately constricted affect, but otherwise normal

thought process, orientation, perception, fund of knowledge, abstract thought, and

insight and judgment; Plaintiff had some deficits in delayed short-term memory but

she had normal long-term memory and normal concentration); Tr. 695-96 (July 20,

2014: during a mental status examination at a consultative psychological

examination, Plaintiff was cooperative and pleasant throughout the examination;

the examining doctor opined that Plaintiff did "not currently meet criteria for a

mental health diagnosis," she "appeared high functioning," and "did well on her

mental status examination"); Tr. 1021-22 (September 15, 2016: mental status

examination showed Plaintiff had a depressed and anxious mood, good eye

contact, cooperative attitude, normal speech, normal thought process and content,

ORDER - 16

full insight, good judgment, good fund of knowledge, and no suicidal or homicidal

ideation); Tr. 1175 (October 6, 2016: mental status examination showed Plaintiff

had good judgment, normal mood and affect, and normal recent and remote

memory); Tr. 1009-10 (October 17, 2016: upon mental status examination,

Plaintiff had depressed mood, but euthymic affect, normal thought process, normal

insight and judgment, and normal cognitive functioning); Tr. 1201-02 (December

2, 2016: mental status examination showed Plaintiff was well-groomed, had a

depressed and anxious mood, good eye contact, cooperative attitude, normal

speech, normal thought process and content, full insight, good judgment, good

fund of knowledge, and no suicidal or homicidal ideation); Tr. 1366 (December 18,

2017: mental status examination showed good judgment, normal mood and affect,

and normal recent and remote memory); Tr. 1193-94 (February 10, 2017: mental

status examination showed Plaintiff was well-groomed, had a depressed and

anxious mood, good eye contact, cooperative attitude, normal speech, normal

thought process and content, full insight, good judgment, good fund of knowledge,

and no suicidal or homicidal ideation); Tr. 1151 (May 2, 2017: mental status

examination showed Plaintiff had good judgment, normal mood and affect, and

normal recent and remote memory); Tr. 1318-19 (June 13, 2017: mental status

examination showed Plaintiff was well-groomed, had a depressed and anxious

mood, good eye contact, cooperative attitude, normal speech, normal thought

ORDER - 17

process and content, full insight, good judgment, good fund of knowledge, and no

suicidal or homicidal ideation); Tr. 1362 (February 9, 2018: mental status

examination showed good judgment, normal mood and affect, and normal recent

and remote memory).

Plaintiff disagrees with the ALJ's findings, and argues that the ALJ

improperly discounted her symptom allegations because "objective medical

evidence of orthopedic abnormalities and diabetes is well established in the

medical records." ECF No. 13 at 15.  As support for her argument, Plaintiff asserts

that a long-term provider completed forms for Plaintiff to get a disabled parking

permit and wrote a prescription for a walker, and the Washington State Division of

Long Term Care and Aging found Plaintiff eligible for caregiving services for

thirty hours per month.  ECF No. 13 at 15-16 (citing Tr. 536).  It is the ALJ's

responsibility to resolve conflicts in the medical evidence.  *Andrews v. Shalala*, 53

F.3d 1035, 1039 (9th Cir. 1995).  Where the ALJ's interpretation of the record is

reasonable as it is here, it should not be second-guessed.  *Rollins*, 261 F.3d at 857.

The Court must consider the ALJ's decision in the context of "the entire record as

a whole," and if the "evidence is susceptible to more than one rational

interpretation, the ALJ's decision should be upheld."  *Ryan v. Comm'r of Soc. Sec.*,

528 F.3d 1194, 1198 (9th Cir. 2008) (internal quotation marks omitted).  Here, the

ALJ reasonably concluded, based on this record, that the objective medical

ORDER - 18

evidence did not support the level of impairment alleged by Plaintiff.  Tr. 23-24.

Instead, the ALJ concluded that the objective medical evidence of Plaintiff's

physical and mental impairments established that she had the capacity to perform

light work with the additional limitations set forth in the RFC.  Tr. 68.  The ALJ's

finding is supported by substantial evidence and was a clear and convincing

reason, in conjunction with inconsistency with daily activities, improvement with

medication, and noncompliance with treatment, *see infra*, to discount Plaintiff's

symptom complaints.

### 2. Inconsistent with Daily Activities

The ALJ found that Plaintiff's activities were inconsistent with the level of

impairment Plaintiff alleged.  Tr. 65-66.  An ALJ may consider a claimant's

activities that undermine reported symptoms.  *Rollins*, 261 F.3d at 857.  If a

claimant can spend a substantial part of the day engaged in pursuits involving the

performance of exertional or nonexertional functions, the ALJ may find these

activities inconsistent with the reported disabling symptoms.  *Fair v. Bowen*, 885

F.2d 597, 603 (9th Cir. 1989); *Molina*, 674 F.3d at 1113.  "While a claimant need

not vegetate in a dark room in order to be eligible for benefits, the ALJ may

discount a claimant's symptom claims when the claimant reports participation in

everyday activities indicating capacities that are transferable to a work setting" or

ORDER - 19

when activities "contradict claims of a totally debilitating impairment."  *Molina*, 674 F.3d at 1112-13.

Here, the ALJ discussed Plaintiff's allegations of hip and leg pain that made it difficult for her to stand, sit, and walk, as well as her claim that her condition later worsened and caused more difficulty in her daily living.  Tr. 64 (citing Tr. 438-39, 443, 462).  The ALJ referenced Plaintiff's testimony that her daily fatigue worsened and she needed to rely on her boyfriend to help her throughout the day, she had difficulty leaving her home, and did not feel motivated to do anything.  Tr. 64 (citing Tr. 108-09, 142).  The ALJ also highlighted Plaintiff's allegations that she had occasional episodes of dizziness and vertigo, and she had neuropathy in her hands and feet.  Tr. 65 (citing Tr. 136, 139).  However, the ALJ noted that Plaintiff engaged in activities that were incompatible with the extreme limitations alleged.  Tr. 65-66.  For example, Plaintiff reported that she had no problem with personal care, she prepared meals, cleaned her home, cared for pets, and did dishes and household chores, although it took longer, she went out alone weekly, shopped in stores for groceries, and went places with groups of people/friends.  Tr. 65 (citing Tr. 438-45).  The ALJ noted that at her first hearing, Plaintiff testified she continued to prepare meals for herself and her boyfriend, and despite her allegation of dropping things, she denied that she had problems using her hands and testified that she did dishes.  Tr. 65, 105-06, 109.  Further, the ALJ referenced Plaintiff's

ORDER - 20

testimony at her second hearing that she continued to prepare her own meals, spent time visiting with several friends from her apartment building, managed her personal care, and went shopping in stores for groceries with her caregiver.  Tr. 65, 129, 132, 134, 143-44.  The ALJ also noted that Plaintiff testified she had been caring for a puppy since December 2017, including taking the dog outside for walks several times a day for up to 30 minutes at a time.  Tr. 141-42.  The ALJ stated that evidence showed Plaintiff went out daily and could independently get around and back to her living facility, and although Plaintiff had some difficulty with fastening clothing and lifting her arm above shoulder level, she could bathe, dress, and perform personal care.  Tr. 65 (citing Tr. 524-29).  The ALJ cited evidence that Plaintiff regularly performed daily living activities such as preparing simple meals, light housekeeping, and managing her finances without difficulty, and Plaintiff had close relationships with friends and family.  Tr. 65 (citing Tr. 530-33).  The ALJ also highlighted Plaintiff's report that she was spending time with her grandchildren and having them spend the night, and that she spent time with friends.  Tr. 65 (citing Tr. 1351).  The ALJ reasonably concluded that these activities were inconsistent with the debilitating level of impairment Plaintiff alleged.  Tr. 65-66.

Plaintiff challenges the ALJ's finding by asserting that Plaintiff's activities as listed in her function report, Tr. 438-445, in and of themselves, cannot serve to

ORDER - 21

1    undermine Plaintiff's credibility.  ECF No. 13 at 15.  Plaintiff asserts that she

2    completed her function report on June 13, 2014, Tr. 445, and over time her

3    impairments worsened, so her hearing testimony was more representative of her

4    abilities and limitations.  ECF No. 13 at 15.  Plaintiff also argues that her function

5    report did not address how often or how long Plaintiff performed these activities or

6    whether she had increased pain when doing these activities.  ECF No. 13 at 15.

7    First, the ALJ did not rely solely on Plaintiff's activities as noted in her function

8    report from June 2014 in discrediting her symptom claims, but also cited Plaintiff's

9    testimony from both of her hearings, as well as a Department of Social and Health

10   Services (DSHS) summary from November 2017 and mental health progress notes

11   from October 2017.  Tr. 65, 105-06, 109, 129, 132, 134, 141-44, 524-33, 1351.

12   Second, an ALJ may discount a claimant's symptom claims when the claimant

13   reports participation in everyday activities that "contradict claims of a totally

14   debilitating impairment."  *Molina*, 674 F.3d at 1112-13.  Here, the ALJ identified

15   Plaintiff's specific alleged impairments and noted specific activities that indicated

16   Plaintiff was less limited than she alleged.  Tr. 65-66.  This was a clear and

17   convincing reason to give less weight to Plaintiff's subjective symptom testimony.

18       *3.  Improvement with Medication*

19       The ALJ found that Plaintiff experienced general improvement in her

20   physical symptoms when she began receiving prescribed diabetes and

ORDER - 22

cardiovascular medications.  Tr. 66.  The effectiveness of treatment is a relevant factor in determining the severity of a claimant's symptoms.  20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) (determining that conditions effectively controlled with medication are not disabling for purposes of determining eligibility for benefits); *Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008) (recognizing that a favorable response to treatment can undermine a claimant's complaints of debilitating pain or other severe limitations).

The ALJ concluded that Plaintiff's physical symptoms responded to treatment.  Tr. 66.  The ALJ noted that Plaintiff testified at the second hearing that she no longer had active cardiovascular issues, and that her cardiologist discontinued her prescribed medication.  Tr 66 (citing Tr. 136, 1381).  The ALJ also found that treating sources characterized Plaintiff's diabetes as "stable" and "uncomplicated" with improved blood sugar levels during times when Plaintiff remained compliant with her prescribed treatment.  Tr. 67 (citing Tr. 630, 635, 638).  Further, the ALJ noted that after a follow-up examination on July 11, 2013, Plaintiff's provider observed that Plaintiff's diabetes remained under control as long as she remained compliant with taking her prescribed "medications that are affordable."  Tr. 67 (citing Tr. 650).  The ALJ noted that this provider also opined that Plaintiff's symptoms associated with diabetes, hypothyroidism, and migraines

were "not disabling," Tr. 650, and his clinical notes indicated that Plaintiff

remained stable when she remained compliant with prescribed medication.  Tr. 67

(citing Tr. 1168, 1363, 1367).  The ALJ also noted that Plaintiff testified her sleep

improved with prescribed medication, which she admitted she only took on an

occasional basis.  Tr. 66, 138-39.  Further, the ALJ noted that Plaintiff testified she

had improvement with neuropathy in her lower extremities with medication

treatment.  Tr. 66, 139.

The ALJ also concluded that Plaintiff's mental health symptoms responded

to treatment.  Tr. 66.  The ALJ found that Plaintiff had improvement in mood and

depressive symptoms upon receiving prescribed antidepressant medication and

counseling.  Tr. 66 (citing Tr. 1151, 1184-1205, 1307-24, 1354).  Further, the ALJ

noted that in October 2017, Plaintiff's therapist reported she would be

discontinuing Plaintiff's treatment as she no longer needed services because she

had no mood disturbances or other psychological symptoms and had achieved all

of her goals.  Tr. 66 (citing Tr. 1351, 1354).  The ALJ also cited Plaintiff's

testimony from the second hearing that her mental health symptoms improved

since June 2016 and she stopped psychotherapy treatment at Frontier Behavioral

Health in October-November 2017.  Tr. 66, 130-31, 142.  Further, the ALJ noted

that in a DSHS Long Term Care Service Summary dated November 29, 2017, the

intake evaluator reported that Plaintiff admitted to having depression in the past

but she did not have any current depressive symptoms.  Tr. 65 (citing Tr. 544).  On

this record, the ALJ reasonably concluded that Plaintiff's conditions improved with

treatment.  This finding is supported by substantial evidence and was a clear and

convincing reason to discount Plaintiff's symptom complaints.

### 4.  Noncompliance with Treatment

The ALJ found that Plaintiff's noncompliance with prescribed treatment was

inconsistent with her symptom complaints.  Tr. 67.  Unexplained, or inadequately

explained, failure to seek treatment or follow a prescribed course of treatment may

serve as a basis to discount a claimant's reported symptoms, unless there is a good

reason for the failure.  *Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007)

The ALJ noted that treating sources characterized Plaintiff's diabetes as

"stable" and "uncomplicated" with improved blood sugar levels during times when

Plaintiff remained compliant with prescribed treatment, Tr. 630, 635, 638,

however, Plaintiff did not always comply with prescribed treatment.  Tr. 67.  For

example, the ALJ noted that during an examination on June 3, 2009, Plaintiff's

diabetes was characterized as "uncontrolled" and it was noted that Plaintiff had not

been checking blood sugar levels and had not been taking medication.  Tr. 67

(citing Tr. 620-21).  The ALJ cited the provider's recommendation that Plaintiff

restart treatment.  Tr. 67 (citing Tr. 620-21).  On this record, the ALJ reasonably

concluded that Plaintiff's symptoms were not as limiting as Plaintiff claimed.  This

ORDER - 25

1    finding is supported by substantial evidence and was a clear and convincing reason

2    to discount Plaintiff's symptom complaints.  Further, Plaintiff does not challenge

3    this finding, ECF No. 13 at 12-15, thus any challenge is waived.  *Carmickle v.*

4    *Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008); *Kim v. Kang*,

5    154 F.3d 996, 1000 (9th Cir. 1998)

6    **B.    RFC Formulation, Step Four, and Step Five**

7         Plaintiff contends that the ALJ's step four and step five findings were based

8    on an improper RFC formulation.  ECF No. 13 at 16-18.  "[T]he ALJ is

9    responsible for translating and incorporating clinical findings into a succinct RFC."

10   *Rounds v. Comm'r Soc. Sec. Admin.*, 807 F.3d 996, 1006 (9th Cir. 2015).  To the

11   extent the evidence could be interpreted differently, it is the role of the ALJ to

12   resolve conflicts and ambiguity in the evidence.  *See Morgan v. Comm'r of Soc.*

13   *Sec. Admin.*, 169 F.3d 595, 599-600 (9th Cir. 1999).  Where evidence is subject to

14   more than one rational interpretation, the ALJ's conclusion will be upheld.  *Burch*

15   *v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).  The Court will only disturb the

16   ALJ's findings if they are not supported by substantial evidence.  *Hill*, 698 F.3d at

17   1158.  Plaintiff claims the ALJ should have determined that she had the RFC to

18   perform only sedentary work, and the ALJ erred in formulating an RFC that

19   instead allowed for the performance of light work.  ECF No. 13 at 16.  However,

20   Plaintiff's argument is based entirely on the assumption that the ALJ erred in

considering Plaintiff's symptom claims and the objective medical evidence.  ECF

No. 13 at 16-18.  For reasons discussed throughout this decision, the ALJ's

consideration of Plaintiff's symptom claims and the objective medical evidence is

legally sufficient and supported by substantial evidence.  Thus, the ALJ did not err

in assessing the RFC or finding Plaintiff capable of performing past relevant work

as an order clerk and additional light work existing in significant numbers in the

national economy, including office helper and parking lot attendant.  Tr. 63-64, 70-

72.  Moreover, any error would be harmless, as the ALJ found Plaintiff capable of

performing the sedentary jobs of dispatcher maintenance service, receptionist,

insurance clerk, and data entry clerk.  Tr. 72.

## CONCLUSION

Having reviewed the record and the ALJ's findings, the Court concludes the

ALJ's decision is supported by substantial evidence and free of harmful legal error.

Accordingly, **IT IS HEREBY ORDERED**:

1. Plaintiff's Motion for Summary Judgment, **ECF No. 13**, is **DENIED**.

2. Defendant's Motion for Summary Judgment, **ECF No. 17**, is

**GRANTED**.

*//*

*//*

*//*

ORDER - 27

1       3. The Clerk's Office shall enter **JUDGMENT** in favor of Defendant.

2       The District Court Executive is directed to file this Order, provide copies to

3   counsel, and **CLOSE THE FILE.**

4       DATED April 28, 2020.

5                           _s/Mary K. Dimke_
                            MARY K. DIMKE
6                   UNITED STATES MAGISTRATE JUDGE

7

8

9

10

11

12

13

14

15

16

17

18

19

20

ORDER - 28